## Mis v. Polish Society of Knights of St. Casimir

*Philip F. Schmehl*, for plaintiff.

*Darlington Hoopes* and *Edward G. Wink*, for defendant.

SHANAMAN, J., April 24, 1937.—Defendant is a sick benefit society. Plaintiff, a member, sued defendant for sick benefits, averring a continuing illness and claiming benefits to date of suit. At the trial, binding directions were given for plaintiff, and the trial judge at the same time told the jury that the real question on which the ultimate disposition of the case would depend was one for the court. The jury accordingly found a verdict for plaintiff for $259. Defendant has taken rules for new trial and judgment n. o. v.

It is not disputed that on January 19, 1933, plaintiff, while at work, suffered an injury to his left shoulder, that he was a member in good standing, and that defendant society made regular payments to him for several years, beginning February 11, 1933, and ending April 18, 1936. It was the custom of the society for the beneficiary to present for each payment a doctor's certificate, and the society stopped payments upon receipt of such certificate that plaintiff's disability was permanent and his condition healed as far as possible. The injury was to the soft parts of the left shoulder joint, and became progressively worse, resulting in a permanent stiffening and complete loss of function of the joint, for which there is no cure or further treatment and no probable improvement. Plaintiff can use his hand, and can lift the arm but cannot use it.

Defendant contends that plaintiff is not sick within the meaning of its constitution, nor has been at any time since the accident, and that the payments made by it should be regarded as voluntary benevolences. We will say at once that the payments as respects amounts and timing were a substantial performance of chapter 2, sec. 4, of the society's constitution, as affected by a resolution adopted at its regular meeting on January 8, 1933. There is no evidence that the payments, as long as they continued, were anything else than a recognition by the society of a supposed obligation.

The constitution is in the Polish language, accompanied in the same booklet by an English translation. It was offered as a whole in evidence, and with nothing to the contrary we must presume that the English translation is correct. Nowhere in it is the condition or description of a member when "beneficial" ever described otherwise than in the following words or phrases: "in cases of sickness," "entitled to sick benefits," "period of their sickness," "sick members," "if a member is taken sick," and the like. The subjects of disability, incapacity, confinement to bed or home, accidental injury, are not mentioned.

However, chapter 2, sec. 7, disentitles a member to benefits if "his sickness originated from drunkenness, fight, or immoral conduct, or if his sickness was feigned," and chapter 3, sec. 13, provides that "any member losing an arm or a leg shall receive the sick benefit until the physician gives a written certificate that he is entirely healed."

The general rule is that accidental injury of a member of a society agreeing only to pay "sick benefits" does not by itself entitle such member to demand the payment of sick benefits: Kelly v. Ancient Order of Hibernians, 9 Daly 289 (N. Y., 1880) ; Villone v. Guardla Perticara, 62 Misc. 257, 114 N. Y. Supp. 801 (1909) ; Beaudoin v. La Societe St. Jean Baptiste et al., 116 Me. 428, 102 Atl. 234 (1917) ; Fazekas v. Perth Amboy Holy Mary Roman Catholic Sick Benefit Society, 13 N. J. Misc. 822, 181 Atl. 631 (1935). No Pennsylvania cases have been found except Wegner v. Deutcher Kranken Unterstutzungs Verein, 4 Northamp. 154, in which the term "sickness" was held to cover accidental injury. This lower court decision seems contrary to the general trend.

Some doubt is thrown upon the true construction of defendant's constitution in this respect by section 13 above quoted. There are, of course, types of illness which produce gangrene and may result in the necessary amputation of a limb. Still it appears unlikely that so restricted a sense of the words was in the mind of the adopters of the constitution. Certainly the words by themselves would embrace the loss of a limb through accident. Furthermore, the regular payments made and accepted are not without significance as a construction by the parties themselves. We do not, however, lose sight of the fact that the society by official action discontinued the said payments.

Chapter 1, sec. 17, provides that "any member being sick longer than two months shall present the testimony of the physician at each meeting," and chapter 1, sec. 18, provides that "any sick member shall notify the Secretary

of his sickness and also when he recovers," and chapter 3, sec. 14, provides that "any member announcing his sickness shall present to the secretary the testimony of the physician." We are inclined to think, in view of all the relevant provisions and circumstances, that the general intent was that a member should become beneficial when his body, through either illness or injury, required the ministrations of a physician, and that the patient's discharge by the physician, at least in case of accidental injury, should terminate the liability. Certainly, since the liability upon the removal of an arm or a leg terminates upon the healing of the wound: Chapter 3, sec. 13; it would be unreasonable to continue the liability in a case where the arm remains intact but has completely lost the motility of the shoulder joint due to an accidental injury of the soft part of the joint, without the slightest professional or other testimony as to the existence of any known disease of the joint or other bodily illness. We therefore conclude that liability for payments ceased on or about April 19, 1936.

Chapter 2, sec. 4, entitles the member to payments as follows: $2.50 for the first week; $5 for each succeeding week till he shall receive $150; after that $4 weekly till he receives $150; after that $3 weekly till he receives $150; and after that $2 per week to the end of his sickness. The payments actually made during the period of liability were less than called for by this section but were in accord with and in fact actually exceeded the amounts called for by the resolution passed at the general meeting on January 8, 1933, above referred to. The effect of this resolution was to diminish the payments by one half, making the amounts under chapter 2, sec. 4, to be payable only every two weeks instead of every week. The action was taken in accordance with chapter 1, sec. 10, of the constitution, which provides that "When the amount in the Treasury falls to the sum of $100, the Secretary shall have the right to suspend payments in cases of sickness

for a period decided upon by the Society. And no member shall be entitled to sick benefits during such period."

It is not denied that the amount in the treasury had fallen below $100 on January 8, 1933, but plaintiff contends that the action taken on that day was illegal and void, because the constitution provides for suspension of payments and vests the power in the secretary, and does not provide for a reduction of payments or vest such power in the annual meeting. We do not share this view. The quoted section expressly disentitles the member to sick benefits during the period of suspension, and therefore is more than a mere provision for the postponement of liability. The power of suspension is vested necessarily in the society, because it is required to determine the period during which the secretary shall apply its rule as modified. The conditional power to abolish temporarily all liability embraces the power to abolish it partly. A partial suspension is less drastic than a complete one and less harmful to the beneficial member. Every suspension is in fact pro tanto a reduction, and the action actually taken was in effect a suspension to take place in alternate weeks. We conclude that defendant society is not indebted to the plaintiff, and is entitled to judgment n. o. v. It becomes unnecessary to consider the rule for a new trial.

And now, to wit, April 24, 1937, defendant's rule for judgment n. o. v. is made absolute.